# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HK SYSTEMS, INC.**
       **Plaintiff,**

    v.                                            Case No. 02C1103

**EATON CORPORATION**
       **Defendant.**

## DECISION AND ORDER

Plaintiff HK Systems, Inc. ("HK"), brings this diversity action against defendant Eaton Corporation ("Eaton"), alleging that Eaton breached a contractual obligation to defend, indemnify, and hold it harmless for certain liabilities. HK now moves for partial summary judgment on the issue of liability, and Eaton moves for summary judgment.

## I. FACTS

In August 1994, Eaton-Kenway, Inc. ("Eaton-Kenway"), a subsidiary of Eaton, responded to a request for a proposal from Iowa Beef Producers, Inc. ("IBP"), to construct an automated material handling system ("AMHS") for its beef processing plant in Dakota City, Nebraska. Eaton-Kenway and IBP entered into negotiations and, in December 1994, IBP advised Eaton-Kenway by letter that it would purchase an AMHS from Eaton-Kenway. IBP and Eaton-Kenway continued to negotiate the AMHS's design and its "throughput" ability, i.e., its capacity to move cartons of beef in a given period of time. On January 11, 1995, R. K. Long of Eaton-Kenway represented to IBP in a letter that the AMHS would "meet or exceed" IBP's expectations with respect to throughput. (First Am. Compl. Ex. D.)

While Eaton-Kenway and IBP negotiated concerning the design of the AMHS, Harnischfeger Engineers, Inc. ("Harnischfeger"), which previously competed with Eaton-Kenway, entered into negotiations with Eaton and Eaton-Kenway concerning purchasing some of Eaton-Kenway's assets. On January 12, 1995, Eaton, Eaton-Kenway and Harnischfeger entered into an Asset Purchase Agreement ("Agreement") pursuant to which Harnischfeger purchased Eaton-Kenway's rights in connection with certain projects including the IBP Dakota City project. In February 1995, the parties completed the transaction, and Harnischfeger changed its name to HK Systems, Inc.

In Article 3 of the Agreement, HK agreed that:

As partial payment for the Subject Assets, the Buyer shall assume at the Closing, the following liabilities and obligations of the Seller (the "Assumed Liabilities"):

(a) All of the liabilities and obligations of the Subject Business incurred in the ordinary course of business prior to the Closing other than the Excluded Liabilities (as hereinafter defined);

(b) All of the liabilities and obligations of the Subject Business which accrue after the Closing Date other than the Excluded Liabilities to the extent not paid or performed prior to the Closing.

In Article 10.1 of the Agreement, Eaton and Eaton-Kenway agreed as follows:

<u>Indemnification of the Buyer</u>. Each of the Seller [i.e., Eaton-Kenway] and Eaton, jointly and severally shall indemnify the Buyer . . . and hold [it] harmless from and against any and all damages, losses, deficiencies, actions, demands, judgments, costs and expenses (including attorneys' and accountants' fees) of or against [the Buyer] resulting from . . . (iii) any act or omission of the Seller or Eaton or any occurrence of a matter with respect to the Subject Assets or the Subject Business relating to or arising out of the period on or before the Closing Date, including without limitation, any claim related to any work performed by the Seller under . . . any of the . . . Projects . . . .

On March 23, 1995, HK entered into a contract with IBP pursuant to which it manufactured and installed the AMHS for the Dakota City project. Subsequently, IBP sued HK alleging that the AMHS had failed to satisfy its expectations. IBP asserted claims of: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty of fitness; (4) breach of implied warranty of merchantability; (5) negligent misrepresentation; (6) fraud in the inducement; and (7) violation of the Nebraska Uniform Deceptive Trade Practices Act ("UDTPA").

Believing that IBP's claims arose at least in part out of Eaton-Kenway's representations concerning the AMHS, including the Long letter, HK asked Eaton to defend, indemnify and hold it harmless pursuant to Article 10.1 of the Agreement. When Eaton refused, HK defended IBP's suit. It obtained summary judgment on IBP's fraud in the inducement claim and an order excluding Eaton-Kenway's statements made prior to HK's entering into the IBP contract. HK ultimately settled IBP's suit, after which it asked Eaton to indemnify it for a portion of its settlement and defense costs. Eaton refused HK's request, and HK commenced the present action.

I will state additional facts in the course of the decision. Further, I will hereafter refer to Eaton and Eaton-Kenway as "Eaton."

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no <u>genuine</u>

issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). When both parties have moved for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to summary judgment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983).

### III. DISCUSSION

In an action for indemnification, the threshold question is whether the claim for indemnification is within the scope of the indemnification agreement. 41 Am. Jur. 2d Indemnity § 13 (2005) (citing Grand Trunk W. R.R., Inc. v. Auto Warehousing Co., 262 Mich. App. 345, 357 (2004)). Determining whether a claim for indemnification is within the scope of an indemnification agreement requires "only a straightforward analysis of the facts and the contract terms." Id. (citing Grand Trunk W. R.R., Inc., 262 Mich. App. at 357). The parties agree that Wisconsin law governs the analysis.

I first address the scope of the indemnification provision in the Agreement. Previously, Eaton argued that Article 10.1 of the Agreement, which contains the

4

indemnification provision, did not apply to IBP's claim against HK because IBP's claim accrued after the closing date of the Agreement and was therefore governed by Article 3(b). In my December 17, 2003 Memorandum, I found the Agreement to be ambiguous on this point. Thus, the parties offer extrinsic evidence. Such evidence presents no factual disputes, thus determining the meaning of the Agreement is a question of law for the court. See Walgreen Co. v. Sara Creek Prop. Co., 775 F. Supp. 1192, 1195-96 (E.D. Wis. 1991), aff'd, 966 F.2d 273 (7th Cir. 1992) (stating that under Wisconsin law "[i]f the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide"); see also Cont'l Cas. Co. v. N.W. Nat'l Ins. Co., 427 F.3d 1038, 1041 (7th Cir. 2005) (reaching the same conclusion under Illinois law).[1]

Eaton offers the deposition testimony of its employee, Ken D. Semelsberger, who states that the parties intended the provisions of the Agreement to be read in the context of the Agreement as a whole, and that Article 10.1 must be read in this way. HK presents an Assignment and Assumption Agreement that it and Eaton entered into on February 13, 1995, stating in relevant part that "the indemnification provisions of the [Agreement] shall apply with respect to debts, liabilities, and obligations assumed hereunder." (Decl. of Peter K. Richardson in Supp. of Pl.'s Mot. for Partial Summ. J. Ex. C at ¶ 4).[2]  Semelsberger's

---

[1] Cf. Confold Pac., Inc. v. Polaris Indus., No. 05-1285 2006 U.S. App. LEXIS 513 at *10 (7th Cir. Jan 10, 2006) (stating that summary judgment is improper if there is tension between the extrinsic evidence and the words of the contract or if the meaning of the contract remains uncertain after the extrinsic evidence is presented, but is proper if the extrinsic evidence strongly supports one interpretation).

[2] The Assignment and Assumption Agreement appears to have been incorporated into the Agreement. (See First Am. Compl. Ex. E at § 13.6) (stating that the entire

5

testimony adds little, but the Assignment and Assumption Agreement makes clear that the liabilities assumed under it by HK, and thus subject to indemnification, include the liabilities identified in Article 3(b), i.e., liabilities that accrued post-closing. Thus, the indemnification provisions of Article 10.1 apply to IBP's claim against HK.

Eaton makes several other arguments as to why it is not obliged to indemnify HK. First, it argues that where an indemnitee incurs losses resulting partly from its own conduct and partly from that of the indemnitor, it may not recover even partial indemnification unless its agreement with the indemnitor expressly authorizes such recovery. However, the law does not support this assertion. See Young v. Anaconda Am. Brass Co., 43 Wis. 2d 36, 55 (1969) (stating that when an injury is caused by the combined negligence of the indemnitor and indemnitee, the indemnitor is liable for the portion of "the total liability as is attributable to the indemnitor's acts if provided for without a strict construction of the agreement"). Thus, an indemnitor may be required to provide partial or comparative indemnification whether or not the contract expressly provides for such. Moreover, I previously determined that "the unqualified language 'resulting from' contained in Article 10.1 encompasses indemnification for injuries that are either wholly or partially due to the"

---

agreement of the parties consists of the Agreement and the exhibits, agreements and instruments executed and delivered pursuant to it); (see also id. at § 4.2(b)) (stating that the Assignment and Assumption Agreement shall be delivered to Eaton at closing). Further, under Wisconsin law, contracts that are executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be construed together as if one contract, even if they do not refer to each other. O'Leary v. Sterling Extruder Corp., 533 F. Supp. 1205, 1207 (E.D. Wis. 1982). Thus, the Assignment and Assumption Agreement might reasonably be regarded as part of the Agreement rather than as extrinsic evidence. However, because the parties treat it as extrinsic evidence, I will do likewise. However, if I considered the Assignment and Assumption Agreement part of the Agreement, I would conclude that the Agreement is not ambiguous.

actions of Eaton.  (Dec. 17, 2003 Mem. at 9.)  Thus, Eaton may be required to partially indemnify HK.

Second, Eaton argues that it need not indemnify HK for losses resulting from its statements to IBP because HK knew about such statements and did not disavow them.  However, Eaton cites no law or contractual provision supporting its assertion that by failing to disassociate itself from Eaton's statements HK gave up its contractual right to indemnification.  Thus, I reject this argument.

Third, Eaton argues that it need not indemnify HK because IBP's claims were not based on Eaton's acts or omissions.  The parties agree that Eaton need not indemnify HK for liability HK incurred based solely on its own conduct, and that IBP's negligent misrepresentation claim was based solely on HK's conduct.  However, IBP's other claims were based at least in part on Eaton's statements or acts.  In the litigation against HK, IBP argued that Eaton's assurances that the AMHS would meet its throughput requirements supported its claims for breach of contract, breach of express warranty, breach of implied warranty of merchantability and fitness for a particular purpose, fraud in the inducement, and its UDTPA claim.  (See, e.g., IBP, Inc.'s First Am. Compl. at 6) (alleging, with respect to the breach of express warranty claim, that Eaton's guarantees induced IBP to enter into the contract with HK);  (id. at 12) (alleging, with respect to the breach of implied warranty of merchantability, that the AMHS was not completed in compliance with the terms of the request for proposal); (id. at 17) (alleging, with respect to the fraud in the inducement claim, that Eaton made numerous representations to IBP concerning the throughput that were false); (IBP, Inc.'s Brief in Opp. to HK Systems, Inc.'s Mot. in Limine at 20) (arguing, with respect to the breach of implied warranty of fitness claim, that "[t]he pre-contract

7

statements . . . [made by Eaton] are directly relevant to show that HK had reason to know of IBP's purpose in buying the AMHS"); (id. at 20) (arguing that "[t]here is substantial evidence that HK violated the UDTPA. HK [at the time, Eaton-Kenway] represented to IBP throughout the proposal phase that the AMHS would meet or exceed IBP's requirements"). Moreover, with respect to the breach of contract claim, IBP alleged that HK failed to properly design an AMHS capable of meeting the throughput requirements, and HK presents evidence that Eaton was partially responsible for the AMHS design. Thus, six of IBP's claims were based in part on statements or acts of Eaton.

Fourth, Eaton argues that it need not indemnify HK because HK has not established that it was actually liable to IBP as the result of Eaton's statements or conduct. Generally, if an indemnitee settles a claim without tendering the defense of the claim to the indemnitor or obtaining the indemnitor's approval of the settlement, the indemnitee may not recover indemnification unless it can establish that it was actually liable to the claimant. However if, before settling, the indemnitee gives reasonable notice of the claim to the indemnitor and the indemnitor refuses to defend the claim, the indemnitee need only show that it was potentially liable to the claimant to recover from the indemnitor.[3]  Deminsky v. Arlington

---

[3]Potential liability means that the indemnitee acted reasonably in settling the underlying suit.

> The reasonableness of the settlement consists of two components, which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle.

8

Plastics Mach., 259 Wis. 2d 587, 616-17 (2003); see also Grand Trunk W. R.R., 262 Mich. App. at 354-55. Thus, an indemnitor that has notice of a claim against its indemnitee and declines the opportunity to defend the claim will generally be bound by any reasonable, good faith settlement the indemnitee might thereafter make. Deminsky, 239 Wis. 2d at 619; Barrons v. J.H. Findorff & Sons, Inc., 89 Wis. 2d 444, 455-56 (1979).

The above principle applies whether or not the indemnification agreement requires the indemnitor to defend the claim.[4] See, e.g., Carey Transport, Inc. v. Greyhound Corp., 80 B.R. 646, 652 (Bank. S.D.N.Y. 1987) ("Where the indemnitor, regardless of any explicit duty to defend, is given notice of the claim and an opportunity to approve a proposed settlement or to take over the defense, and the indemnitor fails to do either, then the indemnitee can proceed and make a reasonable settlement of the claim. The indemnitee can then recover for the settlement on a showing that he was potentially liable."). In the present case, HK put Eaton on notice of IBP's claim, and Eaton declined to defend.[5] Thus,

---

Grand Trunk W. R. R., Inc., 262 Mich. App. at 355-56.

[4]In the present case, the Agreement states that Eaton "may, upon receipt of the written notice of a Third Party Claim and at its expense, defend such claim in its own name or, if necessary, in the name of the Claiming Party." (First Am. Compl. Ex. E at Art. 10.3(b)).

[5]Eaton argues that it could not have defended IBP's claim because both it and HK were potentially liable and therefore had conflicting interests, and because HK did not provide it with the opportunity to control the entire defense. However, the fact that the parties would have had to "determine how to jointly organize the defense," Carey Transport, 80 B.R. at 653, does not absolve Eaton of its contractual obligation to indemnify HK. Moreover, the record suggests that Eaton had little interest in participating in the defense of IBP's claim. Its counsel responded to HK's tender of defense by remarking that "[i]t will be a cold day in Hell before Eaton pays HK another penny." (Decl. of Thomas L. Stricker at § 11.)

9

in order to prevail on its indemnification claim against Eaton, HK need only show that it was potentially liable to IBP based on Eaton's statements or conduct.

Fifth, Eaton argues that HK should be judicially estopped from asserting that any part of the settlement amount is attributable to the fraud in the inducement claim and Eaton's representations. Eaton explains that it should not have to indemnify HK for any part of the settlement amount because HK obtained summary judgment on IBP's fraud in the inducement claim and an order excluding Eaton's representations regarding the AMHS's capability regarding throughput prior to settlement. Thus, Eaton believes that none of the settlement costs in the IBP litigation can be attributed to such claim and such statements and that it would be unfair to permit HK to argue otherwise in the present case. Judicial estoppel attempts to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit. Jarrard v. CDI Telecomm., Inc., 408 F.3d 905, 914 (7th Cir. 2005). It is an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process, and no precise formula guides its application. Id. However, a party must take a position that is clearly inconsistent with a position earlier taken. Second, the party must have prevailed on the basis of its earlier position. Third, the party to be estopped must derive an unfair advantage or impose an unfair detriment on the opposing party as the result of the inconsistency. Finally, the operative facts must remain the same in both cases. Id. at 914-15.

I conclude that it would be inappropriate to apply judicial estoppel in the present case. HK's position in the present case, that it considered the possibility of IBP appealing the adverse decisions relating to the fraud in the inducement claim and Eaton's statements in deciding whether to settle, is consistent with the position taken in the IBP litigation, that

it was not liable for such claim or such statements. Moreover, even if HK's positions are inconsistent, Eaton provides no basis for concluding that it has been unfairly disadvantaged. Judicial estoppel does not apply to inconsistent positions asserted in good faith. Id. at 915. Thus, it would not impair the integrity of the judicial process to permit HK to establish that, in deciding whether to settle, it considered the possibility that it could be liable for the fraud in the inducement claim and Eaton's statements about the AMHS if IBP decided to appeal.

## IV. CONCLUSION

Thus, as to the question of whether IBP's claims are within the scope of the indemnification agreement between HK and Eaton, there are no genuine issues of material fact. Further, for the reasons stated,

**IT IS ORDERED** that Eaton's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that HK's motion for partial summary judgment on the issue of liability is **GRANTED.**

Dated at Milwaukee, Wisconsin this 9 day of February, 2006.

/s_____
LYNN ADELMAN
District Judge

11