## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**HK SYSTEMS INC.,**
        **Plaintiff,**

    v.                                                                     **Case No. 02-C-1103**

**EATON CORPORATION,**
        **Defendant.**

## DECISION AND ORDER

HK Systems, Inc. ("HK") brought this diversity action against defendant Eaton Corporation ("Eaton"), alleging that Eaton breached a contractual duty to indemnify it for costs incurred in settling a lawsuit brought by Iowa Beef Producers, Inc. ("IBP"). On June 18, 2007, I set aside a jury verdict in favor of HK and dismissed most of HK's case, holding that I had previously misinterpreted the indemnification agreement and that if I had properly construed it, I would not have permitted most of HK's case to go to a jury. I left open the question of whether the one remaining issue would necessitate another jury trial or should be decided as a matter of law. Before me now are motions relating to my June 18 decision. HK asks me to vacate the decision or alternatively to certify it for interlocutory appeal. Eaton asks me to partially reconsider the decision and to dismiss HK's case in its entirety. I presume familiarity with the facts and with the June 18 decision.

### I. HK'S MOTION

HK asks me to vacate my June 18 decision on the ground that I was not authorized to reconsider my summary judgment decision post-trial. It cites language in Watson v. Amedco Steel, Inc., 29 F.3d 274, 277 (7th Cir. 1994), stating that "after trial, whether or not summary judgment should have been granted generally becomes moot." However, Watson discusses post-judgment appellate review, and nothing in it suggests that my June 18 interlocutory

decision was unauthorized or in any way improper. Moreover, the Seventh Circuit has made clear that even on appellate review, a question of law addressed in a summary judgment decision may be reviewed after a trial. Chemetall GMBH v. ZR Energy, Inc., 320 F.3d 714, 719-20 (7th Cir. 2003); Rekhi v. Wildwood Indus., Inc., 61 F.3d 1313, 1318 (7th Cir. 1995); see also Larson v. Benediktsson, 152 P.3d 1159, 1168 (Alaska 2007) (discussing precedent from the Seventh Circuit and other jurisdictions on this issue). My June 18 decision addressed a question of law – the interpretation of the indemnification agreement. See Chemetall GMFH, 320 F.3d at 720 (addressing legal issue of whether district court had properly interpreted a contract). Thus, subject to the law of the case doctrine, it was entirely appropriate for me to correct a previous error of law. See McKethan v. Tex. Farm Bureau, 996 F.2d 734, 738, 743 (5th Cir. 1993) (affirming district court's sua sponte post-trial reconsideration of its earlier denial of summary judgment and noting that a trial court is free to reconsider and reverse any of its decisions prior to entering judgment).

HK also argues that I violated the law of the case doctrine because the decision that I reversed was not "dead wrong." (July 31, 2007 Pl.'s Br. in Supp. at 8 (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988).) However, as I attempted to make clear in my June 18 decision, I believe that my pretrial summary judgment decision was "wrong with the force of a five-week-old, unrefrigerated dead fish." Sterling Elec., 866 F.2d at 233.

HK further argues that it was somehow prejudiced by my June 18 decision. However, the issue which that decision addressed – the meaning of the indemnification agreement – was exhaustively briefed in pretrial motions. And the decision did not rely on new legal or factual material. Also, after I decided to reverse myself, I notified the parties. HK did not ask for an opportunity for briefing or oral argument, and the parties indicated that I should issue

the decision and that they would present legal arguments after its release. The crux of HK's prejudice argument is that it was denied the ability to argue its case to the jury under my revised interpretation of the contract. However, as the June 18 decision made clear, under my revised interpretation of the contract, HK had no right to a jury trial on whether the losses associated with most of IBP's claims were indemnifiable because I concluded that such losses were not indemnifiable as a matter of law.

Finally, HK contends that my June 18 decision wrongly concluded that the contract did not require Eaton to indemnify it for losses flowing from IBP's breach of contract, warranty and fraud claims. For the reasons discussed in the June 18 decision, I disagree.

## II. EATON'S MOTION

In the June 18 decision, I determined that HK's losses related to most of IBP's legal claims against it were not indemnifiable. However, I found that IBP's claim under Nebraska's Deceptive Trade Practices Act ("DTPA"), Neb. Rev. Stat. § 87-301 et. seq.,[1] appeared indemnifiable to the extent that HK was potentially liable on the claim based on Eaton's conduct, HK could prove loss related to the claim, and HK's settlement of the claim was reasonable. Eaton now asks me to find, as a matter of law, that HK faced no potential DTPA liability. To determine whether HK faced such liability, I must construe the DTPA as would the Supreme Court of Nebraska. See Brownsburg Area Patrons Affecting Change v. Baldwin, 137 F.3d 503, 507 (7th Cir. 1998). I have examined the DTPA and materials pertaining to it and now agree with Eaton that HK never faced potential liability under that statute. First, it is highly improbable that Nebraska's supreme court would construe the DTPA such that it

---

[1]Although Nebraska courts refer to the statute as the "Uniform Deceptive Trade Practices Act" or "UDTPA" based on the uniform law upon which it was modeled, the Nebraska statute differs considerably from the uniform law. Thus, I refer to it as the DTPA.

-3-

would even apply to commercial transactions of the type at issue in the IBP/HK action. Further, even if that court would find that the DTPA applies to such a transaction, IBP's complaint simply did not state a claim under the statute.

As to the applicability of the DTPA, the unicameral Nebraska legislature enacted the statute to protect ordinary consumers and business competitors from deceptive business practices. In other words, it sought to prevent businesses from making statements that could dupe consumers and thereby harm such consumers and take business away from legitimate competitors. The original act, passed in 1969, was modeled on the uniform act, which was designed to protect business competitors from false advertising and trademark-type deceptions. 1969 Neb. Laws 3224; Uniform Deceptive Trade Practices Act Prefatory Note, 7A U.L.A. 273 (1966). The legislature amended the act in 1974 to provide additional protections for consumers. 1974 Neb. Laws 122; Consumer Sales Practices Act: Floor Debate, 83rd Leg. (1974). The amendments gave the state attorney general the authority to prosecute violations of the act, created criminal penalties for violations of the act, prohibited unconscionable contracts, and added that a contract obtained by a violation of the act would be unenforceable. 1974 Neb. Laws 122.

The legislature did not enact the DTPA to regulate transactions between businesses. It had already adopted the Uniform Commercial Code ("UCC") for that purpose. See Neb. U.C.C. § 1-103 et. seq. The UCC governs how commercial contracts are formed and interpreted, and addresses the remedies for breach of contract and fraud. See, e.g., Neb. U.C.C. § 2-203 (regarding parol evidence); Neb. U.C.C. § 2-204 (regarding contract formation); Neb. U.C.C. § 2-711 (regarding buyer's remedies in general); Neb. U.C.C. § 2-721 (regarding remedy for fraud). The DTPA creates an entirely separate statutory scheme for

conduct that – if applicable to business transactions – would abrogate sections of the UCC.[2] No Nebraska court has ever applied the DTPA, rather than the UCC, to a case involving a business transaction. Further, courts have found that other states' deceptive trade laws do not govern such transactions. See, e.g., Golden Needles Knitting & Glove Co. v. Dynamic Mktg. Enters., Inc., 766 F. Supp. 421, 430 (D.N.C. 1991); see generally Michelle L. Evans, Who is a "Consumer" Entitled to Protection of State Deceptive Trade Practice and Consumer Protection Acts, 63 A.L.R.5th 1 (1998). If given the opportunity, I believe that Nebraska's supreme court would rule likewise and would interpret the DTPA as inapplicable to the transaction at issue in IBP's case against HK.

However, even assuming that the state supreme court would find otherwise, IBP nevertheless failed to state a claim for relief under the law. In its complaint, IBP alleged that Eaton violated the DTPA by stating: (1) that it would meet or exceed IBP's throughput requirement; (2) that it would complete the AMHS on time; and (3) that Eaton and its partner, Alvey, were leaders in the industry and dependable. IBP alleged that these statements constituted representations that the AMHS would have "characteristics," "uses" and "benefits" that it did not have and that the AMHS was of a "particular standard" or "quality" that it was not. See § 87-302. However, as the Nebraska court noted in the underlying case, the alleged statements "constitute[d] expressions of opinion or sale pitches" rather than statements of fact, IBP, Inc. v. HK Sys., No. 8:98CV480, 2000 U.S. Dist. LEXIS 12272, at *7 (D. Neb. Aug.

---

[2]While the UCC bars the consideration of parol evidence that contradicts a contract, see § 2-203, the DTPA likely does not, see Jeff Sovern, Private Actions Under the Deceptive Trade Practices Acts: Reconsidering the FTC as a Role Model, 52 Ohio St. L.J. 437, 451-52 (1991). And while the UCC adopts the common law principle that a breach of contract action should put the parties in the position in which they would have been if not for the breach, see Neb. U.C.C. § 2-701 – 2-725, the DTPA appears to endorse placing a buyer in a better position, see Neb. Rev. Stat. § 87-303.07.

15, 2000), and thus the DTPA did not bar them, see § 87-302. Eaton's alleged statement that it and Alvey were leaders in the field was mere "puffery," see Ed Miller & Sons v. Earl, 502 N.W.2d 444, 453 (Neb. 1993); Fuentes v. Woodhouse Ford, No. A-02-1102, 2004 Neb. App. LEXIS 145, at *23-25 (Neb. Ct. App. June 8, 2004), and the remaining statements were either promises or predictions, not representations of present facts, see McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 855 (8th Cir. 2000) (stating that a misrepresentation must refer to a provable fact); Gerli v. G.K. Hall & Co., 851 F.2d 452, 456 (1st Cir. 1988) (stating that a misrepresentation must refer to a past or existing fact); see also Carlock v. Pillsbury Co., 719 F. Supp. 791, 832 (D. Minn 1989) (same).[3]

In addition, Neb. Rev. Stat. § 87-303.07 – the section under which IBP sought rescission of the AMHS contract – only refers to representations that induce a buyer to purchase a good or service. To the extent that Eaton's statements differed from the provisions contained in the integrated contract between HK and IBP, no court could reasonably conclude that Eaton's statements induced IBP – a sophisticated corporation represented by counsel – to enter into the contract. See Parkhill v. Minn. Mutual Life Ins. Co., 174 F. Supp. 2d 951, 960 (D. Minn. 2000); Richardson v. Mast, 560 N.W.2d 488, 491 (Neb. 1997). And, in fact, the Nebraska court in the underlying case found as much in addressing IBP's fraud claim. See IBP, 2000 U.S. Dist. LEXIS 12272, at *7 (stating that the representations were "not statements of material fact upon which IBP has shown that it reasonably relied"). To the extent that the statements mirrored the terms of the contract, IBP's claim did not go to the representations but rather to the contract itself and is therefore

---

[3]Eaton's statements might be fairly characterized as deceptive if the declarant knew for a fact that Eaton would not honor his representations. However, in the present case, the declarant could not have had such knowledge inasmuch as when he made the statements, Eaton had not yet fully designed the AMHS or begun building or installing it.

plainly not indemnifiable. Finally, because § 87-303.07 refers to the enforceability of a contract, I question whether the section implicates the Eaton/HK indemnification contract at all, as the claim could only have materialized after HK took actions independent of Eaton's statements, i.e., entered into a contract with IBP.

In sum, IBP's DTPA claim plainly lacked legal merit and thus HK faced no potential liability under the statute. As such, Eaton has no obligation to indemnify HK for any losses related to the IBP litigation. Further, to the extent that a portion of HK's settlement loss was based on IBP's DTPA claim, the settlement was unreasonable. As such, HK's claim for indemnification fails as a matter of law.

### III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that Eaton's motion for partial reconsideration is **GRANTED**.

**IT IS FURTHER ORDERED** that HK's motion to vacate is **DENIED**.

**IT IS FURTHER ORDERED** that HK's alternative motion to certify this case for interlocutory appeal is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case be dismissed and judgment be entered in Eaton's favor.

Dated at Milwaukee, Wisconsin, this 12 day of October, 2007.

/s_____
LYNN ADELMAN
District Judge