# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HK SYSTEMS, INC.,**
        **Plaintiff,**

    v.                                                                                               Case No. 02-C-1103

**EATON CORPORATION,**
        **Defendant.**

## DECISION AND ORDER

      HK Systems, Inc. ("HK") brought this diversity action against defendant Eaton Corporation ("Eaton"), alleging that Eaton breached a contractual duty to indemnify it for costs incurred in settling a lawsuit brought by Iowa Beef Producers, Inc. ("IBP"). On June 18, 2007, I set aside a jury verdict in favor of HK and dismissed most of HK's case, holding that I had previously misinterpreted the indemnification agreement and that if I had properly construed it, I would not have permitted most of HK's case to go to a jury. Eventually, I entered summary judgment in favor of Eaton on all claims and dismissed this action. HK appealed, and on January 28, 2009, the Seventh Circuit affirmed my decision.

      On November 1, 2007 – shortly after HK filed its notice of appeal of my order dismissing the case – Eaton filed a motion for sanctions against HK's lawyers pursuant to 28 U.S.C. § 1927, arguing that HK's lead counsel unreasonably and vexatiously multiplied this litigation and violated his duty of candor to the court. I deferred ruling on that motion until the Seventh Circuit resolved HK's appeal. Now that my decision has been affirmed, I will consider Eaton's motion. For the reasons stated below, I find that although this litigation has been hard-fought and contentious, HK's counsel has not engaged in any conduct warranting the imposition of sanctions. Eaton's motion is denied.

## I. LEGAL STANDARD GOVERNING § 1927 SANCTIONS

Under § 1927, I may impose sanctions against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously." The Seventh Circuit has instructed that before imposing such sanctions, a district court must find that an attorney has engaged in either "subjective" or "objective" bad faith. Dal Pozzo v. Basic Machinery Co., Inc., 463 F.3d 609, 614 (7th Cir. 2006); Pac. Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 120 (7th Cir. 1994). To find that counsel acted with subjective bad faith, the court must be satisfied that counsel multiplied the proceedings out of malice or ill will. Dal Pozzo, 463 F.3d at 614. To find that counsel acted with objective bad faith, the court need not find malice or ill will; however, objective bad faith requires a finding that counsel acted with "reckless indifference to the law." Id. That is, "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." Id. (internal quotation marks omitted). Stated differently, to be guilty of objective bad faith, an attorney must have engaged in not simply negligent conduct, but "extremely negligent conduct, [such as] reckless and indifferent conduct." Pac. Dunlop Holdings, 22 F.3d at 120 (alteration mine, internal quotation marks omitted). The Seventh Circuit has also described objectively unreasonable conduct as displaying a "serious and studied disregard for the orderly process of justice." Binder v. Freed, 436 F.3d 747, 751 (7th Cir. 2006) (internal quotation marks omitted).

## II. DISCUSSION

In its motion, Eaton does not indicate whether it views HK's counsel as having acted with subjective or objective bad faith. Probably, Eaton thinks HK's counsel acted with both. Eaton seems to allege subjective bad faith when it accuses counsel of breaching his duty of candor to the court. In addition, Eaton seems to argue that counsel's legal theories were

frivolous, and that therefore he has displayed objective bad faith. In any event, as explained below, I find that counsel has not breached his duty of candor to the court, and that none of his arguments were made recklessly or with indifference to whether they had reasonable legal support. Simply put, counsel had a reasonable legal theory, which he pursued aggressively. In the end, that theory did not carry the day, but aggressively advancing a reasonable legal theory that ultimately fails is not grounds for the imposition of sanctions. Mustafa v. City of Chicago, 442 F.3d 544, 550 (7th Cir. 2006) (putting forth a reasonable legal theory that fails is not sanctionable).

Before proceeding to a detailed analysis of Eaton's allegations against HK's counsel, I present a brief overview of the parties' positions in this litigation. I assume that the reader has some familiarity with the history of the case.

**A.    The Parties' Competing Legal Theories.**

This case arose out of the sale of an automated material-handling system to IBP, a beef processor, for use in its beef-processing plant in Nebraska. Eaton-Kenway, then a subsidiary of Eaton, submitted a proposal to sell such a system to IBP. In December 1994, IBP issued a letter of intent to purchase the system from Eaton-Kenway. Two months later, Eaton sold Eaton-Kenway to HK pursuant to an asset purchase agreement containing the indemnification clause at issue in this case. After the closing date of the asset purchase, HK (which had by then become the owner of Eaton-Kenway's business) signed a contract with IBP for the material-handling system proposed by Eaton-Kenway.

Three years later, IBP sued HK in Nebraska for fraud and breach of contract. The fraud claim was that before the sale of Eaton-Kenway to HK Eaton had misrepresented to IBP the speed at which the material-handling system would operate. The breach of contract claim was that the system did not operate at the speed promised in the contract. HK settled this

suit, agreeing to pay $3 million. HK then brought the current suit against Eaton for indemnification.

The indemnification clause required Eaton to indemnify HK for all losses resulting from any "misrepresentation" made by Eaton-Kenway before the closing date. HK's theory of the case was that because the IBP suit arose out of Eaton-Kenway's alleged misrepresentation of the system's speed prior to the sale of Eaton-Kenway to HK, HK's losses arose out of Eaton-Kenway's pre-closing misrepresentation.[1] Therefore, argued HK, the asset purchase agreement required Eaton to indemnify HK.

Eaton's theory of the case was that, even if Eaton-Kenway made the alleged misrepresentation, such misrepresentation was not the "cause" of HK's losses because an intervening event broke the chain of causation between the misrepresentation and IBP's suit. That intervening event was HK signing the final contract with IBP for the sale of the material-handling system. Under Eaton's theory, after the sale of Eaton-Kenway to HK, it became HK's responsibility to negotiate the final contract for the system with IBP, and HK thus had the opportunity to eliminate any liability that may have resulted from Eaton-Kenway's alleged misrepresentations concerning the system's speed. Essentially, Eaton's argument was that HK had the last clear chance to avoid any problems created by statements made by Eaton-Kenway prior to the closing, and that therefore HK's losses "resulted from" its own post-closing irresponsibility, not Eaton-Kenway's alleged pre-closing misrepresentation.

HK never conceded that the contract between HK and IBP could legally sever the chain of causation between Eaton-Kenway's alleged misrepresentation and HK's loss. HK's chief argument was that no matter what happened after the closing, Eaton-Kenway's alleged

---

[1] When I use the term "closing," I mean the closing of the sale of Eaton-Kenway's assets to HK.

misrepresentation was the root cause of IBP's suit against HK, and therefore Eaton was liable for indemnification. However, HK also made a secondary legal argument aimed at rebutting HK's "last clear chance" argument. HK argued that it did not, in fact, have the last clear chance to avoid any losses from the misrepresentation because events that transpired pre-closing tied HK's hands in its negotiations with IBP. Specifically, HK argued that IBP's letter of intent to purchase the material-handling system along with the other pre-sale interaction between Eaton-Kenway and IBP created an enforceable contract between Eaton-Kenway and IBP regarding the contents of any final contract for the sale of the material-handling system. Because Eaton-Kenway had already agreed to provide a system that would operate at a certain speed, argued HK, HK could not decline to supply such a system when it signed the final contract. Thus, HK did not have the last clear chance to avoid the loss, and therefore it was Eaton-Kenway that "caused," in the legal sense, HK's losses. In furtherance of this secondary argument, HK in its briefs and pleadings described the pre-closing events between Eaton-Kenway and IBP as having resulted in a "contract," and described the contract that HK eventually signed with IBP as the "Amended IBP Contract."

In resolving pre-trial motions, I originally interpreted the indemnification provisions of the asset purchase agreement in HK's favor. I accepted HK's principal argument that its losses "resulted from" Eaton-Kenway's pre-closing conduct, and that therefore Eaton was required to indemnify HK. I never resolved HK's secondary argument and thus did not determine whether Eaton-Kenway and IBP entered into a contract before Eaton sold Eaton-Kenway to HK.

After the trial, I decided that I had erred in interpreting the indemnification provisions in HK's favor. For reasons explained in my June 18, 2007, Decision and Order, I decided that Eaton's "last clear chance" interpretation was the proper interpretation. I found that HK's

ability to negotiate the final contract for the sale of the material-handling system to IBP broke any chain of causation between Eaton-Kenway's alleged misrepresentations and HK's losses, and that therefore Eaton was entitled to judgment as a matter of law. The Seventh Circuit affirmed. Although my decision in favor of Eaton assumed that Eaton-Kenway's pre-sale negotiations with IBP did not prevent HK from freely negotiating its final contract with IBP, I never resolved whether or not the pre-closing events formed a legally-enforceable contract. On appeal, however, the Seventh Circuit stated that it was "unlikely" that the pre-closing events formed an enforceable contract. HK Systems, Inc. v. Eaton Corp., 553 F.3d 1086, 1092 (7th Cir. 2009).

**B.     Counsel Did Not Breach His Duty of Candor.**

In its motion for sanctions, Eaton argues that certain statements by HK's counsel in his pleadings and motions – in which he characterized the pre-closing events between Eaton-Kenway and IBP as forming a "contract," and the final contract between HK and IBP as being an "Amended IBP Contract" – constituted a breach of counsel's duty of candor to the court. Eaton argues that counsel knew that there was no such thing as an "Amended IBP Contract," and that therefore counsel knowingly made a false statement to the court. Eaton also argues that counsel took positions throughout discovery in this case that made it difficult for Eaton to obtain evidence proving that there was no such thing as the "Amended IBP Contract."

I reject Eaton's argument because HK's counsel was entitled to legally characterize the facts in a manner consistent with his overall legal theory. The questions of whether the pre-closing interaction between IBP and Eaton-Kenway led to the formation of a "contract," and whether the eventual contract between HK and IBP could be deemed an "amended' version of the original "contract," are not, as Eaton's argument suggests, questions of pure fact. They are mixed questions of fact and law. Teamsters Local Unions Nos. 75 & 200 v. Barry, 176

-6-
Case 2:02-cv-01103-LA    Filed 03/18/09    Page 6 of 11    Document 423

F.3d 1004, 1010 (7th Cir. 1999) (whether contract exists is mixed question of fact and law); see also E.C. Styberg Eng'g Co. v. Eaton Corp., 492 F.3d 912, 917 (7th Cir. 2007) (same). To determine whether a series of events led to the formation of a contract, the court takes evidence from the parties concerning the historical facts (e.g., who said what to whom), applies the relevant legal principles governing contract formation, and then decides whether the parties' conduct resulted in a legally-enforceable contract. In the course of advocacy, the attorney arguing in favor of two separate contracts will characterize the facts in a manner that favors his legal theory. He will speak in terms of "contract" and "amended contract," rather than, as might his opponent, "purported contract" and "purported amended contract." In so speaking, counsel cannot be said to have breached his duty of candor, unless perhaps counsel's legal characterization of the facts was entirely frivolous, which in this case it was not.

In Eaton's mind, counsel crossed the line between legal advocacy and misrepresenting the facts when he used the term "Amended IBP Contract" in his pleadings. Eaton believes that by creating this term and using initial capital letters, counsel implied that there existed in the world a document entitled "Amended IBP Contract," even though counsel knew that no such document existed. But counsel did not allege that a document bearing that title existed. He simply presented the facts in a manner consistent with his legal theory, which was that the final contract between IBP and HK was an amendment to the purported contract formed between Eaton-Kenway and IBP prior to the sale of Eaton-Kenway to HK. Counsel therefore chose to call the contract between IBP and HK the "Amended IBP Contract." This is

permissible advocacy, not an attempt to trick the court into believing that a document entitled "Amended IBP Contract" existed.[2]

Perhaps Eaton's real complaint is that HK's counsel took contrary positions in the Nebraska litigation and this litigation. Eaton argues that in the Nebraska litigation HK's counsel took the position that there was no contract between IBP and Eaton-Kenway, whereas in the present litigation, counsel changed his tune and argued that IBP and Eaton-Kenway did enter into a contract prior to the sale of Eaton-Kenway to HK. At a number of times throughout this litigation, Eaton argued that because of the inconsistency between HK's position in this case and the Nebraska case, HK should be judicially estopped from asserting that a contract existed between IBP and Eaton-Kenway. However, I rejected Eaton's judicial estoppel argument. Eaton continues to believe that judicial estoppel should have been applied, but even if that were so, I am unaware of any precedent that would support an award of monetary sanctions against an attorney for adopting a legal theory that is contrary to a legal theory he advanced in an earlier case involving different parties and legal issues. In the present case, HK's counsel advanced a reasonable legal theory and did not misrepresent the facts or the law. Even if he took a contrary legal position in an earlier case, he has not breached his duty of candor to the court.

Eaton also argues that I should sanction HK's counsel for some of his conduct during discovery relating to the alleged Amended IBP Contract. Specifically, Eaton argues that counsel engaged in misconduct when he objected to certain of Eaton's discovery requests

---

[2] I also note that my decisions in this case did not depend on my believing that there was both a contract and an amended contract. I do not remember ever attributing any significance to whether there was one or two contracts. Although I referred to the "amended contract with IBP" in my motion to dismiss decision, I did so only in the course of summarizing the complaint's allegations. Nothing in that decision turned on whether the contract between HK and IBP was an amendment to a prior contract between IBP and Eaton-Kenway.

that sought information about that contract. Notably, Eaton does not contend that counsel intentionally concealed any documents or made any fraudulent representations during discovery. Rather, Eaton contends that HK should be sanctioned for objecting to Eaton's discovery requests when, in Eaton's view, those objections were frivolous. However, counsel's objections were consistent with his theory of the case, which was that Eaton-Kenway's misrepresentation caused HK's losses whether or not a contract existed between Eaton-Kenway and IBP, and that therefore the existence of such a contract was irrelevant. Perhaps Eaton is correct that HK's objections were not well-founded. Having alleged that an amended contract existed, it is hard to say that discovery pertaining to the existence of such a contract is not reasonably calculated to lead to the discovery of admissible evidence. Thus, HK's objections may not have been substantially justified, meaning that Eaton might have had a good argument for recovering the costs and attorneys' fees expended on its motion to compel HK's responses. See Fed. R. Civ. P. 37. However, whether HK's objection to any particular request for discovery was substantially justified was an issue to be resolved in connection with the applicable discovery motion. I will not impose sanctions for discovery violations post-judgment.

**C. Counsel Did Not Advance Frivolous Legal Arguments**.

Although Eaton does not directly accuse HK's counsel of advancing frivolous legal arguments, Eaton seems to contend that HK's legal theory was so weak that counsel deserves to be sanctioned for even presenting it to the court. Indeed, Eaton seems to argue that every action taken by HK's counsel to prosecute his theory of the case was vexatious. However, I find that HK's legal theory was reasonable.

As noted, I struggled to interpret the indemnification provisions of the asset purchase agreement. Initially I sided with HK, but as the case went on I realized that Eaton's

-9-
Case 2:02-cv-01103-LA    Filed 03/18/09    Page 9 of 11    Document 423

that sought information about that contract. Notably, Eaton does not contend that counsel intentionally concealed any documents or made any fraudulent representations during discovery. Rather, Eaton contends that HK should be sanctioned for objecting to Eaton's discovery requests when, in Eaton's view, those objections were frivolous. However, counsel's objections were consistent with his theory of the case, which was that Eaton-Kenway's misrepresentation caused HK's losses whether or not a contract existed between Eaton-Kenway and IBP, and that therefore the existence of such a contract was irrelevant. Perhaps Eaton is correct that HK's objections were not well-founded. Having alleged that an amended contract existed, it is hard to say that discovery pertaining to the existence of such a contract is not reasonably calculated to lead to the discovery of admissible evidence. Thus, HK's objections may not have been substantially justified, meaning that Eaton might have had a good argument for recovering the costs and attorneys' fees expended on its motion to compel HK's responses. See Fed. R. Civ. P. 37. However, whether HK's objection to any particular request for discovery was substantially justified was an issue to be resolved in connection with the applicable discovery motion. I will not impose sanctions for discovery violations post-judgment.

**C.     Counsel Did Not Advance Frivolous Legal Arguments**.

Although Eaton does not directly accuse HK's counsel of advancing frivolous legal arguments, Eaton seems to contend that HK's legal theory was so weak that counsel deserves to be sanctioned for even presenting it to the court. Indeed, Eaton seems to argue that every action taken by HK's counsel to prosecute his theory of the case was vexatious. However, I find that HK's legal theory was reasonable.

As noted, I struggled to interpret the indemnification provisions of the asset purchase agreement. Initially I sided with HK, but as the case went on I realized that Eaton's

interpretation was right. Unfortunately, I did not detect my mistake until after the parties expended substantial resources on a jury trial. Eaton is understandably upset about having to incur the expense of a trial even though I should have granted summary judgment. However, Eaton wrongly blames HK for the unnecessary litigation. HK's underlying legal theory was reasonable, and it was entitled to pursue that theory aggressively. Its legal theory was reasonable because it had a strong argument that Eaton-Kenway's misrepresentation spawned the IBP litigation. Indeed, it is quite likely that the IBP suit would not have happened but for Eaton-Kenway's conduct. The hard part of this case was defining the notion of "causation" in the context of the reciprocal indemnification provisions in the asset purchase agreement. As explained in my earlier opinions and by the court of appeals, conduct by both Eaton-Kenway and HK could have been deemed "a cause" of HK's losses, and the text of the indemnification provisions was broad enough to require each side to indemnify the other for the same loss. Only after the jury trial did I realize that my original interpretation was wrong and come to understand that the concept of "intervening and superceding cause" – or, as the court of appeals put it, "responsibility", HK Systems, Inc., 553 F.3d at 1090 – needed to be applied to resolve the case. Applying this concept to the facts was by no means simple, and HK had reasonable arguments in favor of its position that Eaton should be held "responsible" for the loss. In any event, the important point is that my initial mistake was in no way caused by any misrepresentation or improper advocacy by HK. It was the result of misinterpreting an extremely complicated body of law containing no clear guidance on the unique circumstances before the court.

Accordingly, I find that HK's counsel did not pursue his legal theories recklessly or with indifference to whether they had merit. His arguments certainly had merit, even though they did not prevail in the end. Mustafa, 442 F.3d at 550 (putting forth a reasonable legal theory

that failed is not sanctionable under § 1927).

### III. CONCLUSION

Eaton has pointed to other actions by HK's counsel in addition to those discussed above in an effort to show that HK's counsel should be sanctioned. However, after reviewing Eaton's motion, I decline to impose sanctions for such conduct and determine that Eaton's remaining allegations against HK's counsel do not warrant discussion. None of counsel's actions, whether viewed individually or in the aggregate, were unreasonable and vexatious.

**THEREFORE, IT IS ORDERED** that Eaton's motion for sanctions is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18 day of March, 2009.

/s_____
LYNN ADELMAN
District Judge